IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAFAEL HERNANDEZ, | : |
| Petitioner, | : |
| v. | : CIVIL ACTION NO. 09-5842 |
| LOUIS FOLINO, *et al.*, | : |
| Respondents. | : |

**MEMORANDUM**

YOHN, J.                                                                                                            March __, 2010

      Petitioner, Rafael Hernandez, proceeding *pro se*, has filed a motion pursuant to Federal Rule of Civil Procedure 60(b), seeking relief from the court's July 27, 2006, order in civil action no. 04-5398 dismissing as untimely his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

      Petitioner argues that the court's conclusion that his habeas corpus petition was untimely is erroneous under the Supreme Court's later decision in *Jimenez v. Quarterman*, __ U.S. __, 129 S. Ct. 681 (2009). (Pet'r's Rule 60(b) Mot. ¶ 7.) In that case, the Supreme Court held that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final'" for purposes of triggering the one-year limitations period to file a federal habeas corpus action until the conclusion of the out-of-time direct appeal process. *Jimenez*, 129 S. Ct. at 686-87.

      Even assuming that the change in the law reflected in *Jimenez* could constitute a basis for

relief under Rule 60(b)—a question the court need not decide—the *Jimenez* decision is inapplicable to petitioner's case, and the court therefore will deny petitioner's Rule 60(b) motion.

I.      **Procedural History**[1]

On May 4, 1999, petitioner pleaded guilty to first-degree murder in the Berks County Court of Common Pleas in exchange for a sentence of life imprisonment, which was imposed that day. On May 17, 1999, petitioner, by counsel, filed an untimely motion to withdraw his guilty plea, and his counsel also sought permission to withdraw. On May 20, 1999, the court denied the motion to withdraw the guilty plea, granted counsel's request to withdraw, and appointed new counsel, Gail Chiodo, Esq., to represent petitioner.

Chiodo did not file a direct appeal from the denial of the post-sentence motion or a petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 *et seq.* Nor did petitioner. Rather, on March 27, 2000, Chiodo filed a "no merit" letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988), and *Commonwealth v. Turner*, 544 A.2d 927 (1988), which set forth the procedures under which counsel may be permitted to withdraw from representation during PCRA proceedings.[2] The Court of Common Pleas granted Chiodo's request to withdraw that same day. *Commonwealth v. Hernandez*, No.

---

[1] Because petitioner's motion concerns the timeliness of his original habeas corpus petition, it is again necessary to review in some detail the "muddled" procedural history of the case. The following recitation is based in part on the procedural history discussion in the court's prior memorandum, *Hernandez v. Folino*, No. 04-5398, 2006 WL 2136084, at *1-*2 (E.D. Pa. July 27, 2006), and on the record materials submitted by the parties as part of the briefing on petitioner's earlier habeas corpus petition.

[2] These procedures include PCRA counsel's submission of a "no merit" letter detailing the nature and extent of counsel's review, listing each issue the petitioner wishes to have reviewed, and setting forth counsel's explanation as to why petitioner's issues are meritless. *Finley*, 550 A.2d at 215; *Turner*, 544 A.2d at 928

2

3319-98, Order (Berks County Ct. Com. Pl. Mar. 27, 2000). Although neither petitioner nor Chiodo had filed a PCRA petition, the Court of Common Pleas thereafter issued a notice of intent to dismiss petitioner's "P.C.R.A. Petition filed in this matter without a hearing and without the appointment of new counsel." *Hernandez*, No. 3319-98, Notice (Berks County Ct. Com. Pl. Mar. 29, 2000). Petitioner submitted a *pro se* response to the court's notice on May 28, 2000, but the court issued an order "denying" petitioner's "PCRA petition" on June 2, 2000, *Hernandez*, No. 98-3319, Order (Berks County Ct. Com. Pl. June 2, 2000).

On June 23, 2000, petitioner filed a timely *pro se* appeal from the dismissal of the nonexistent PCRA petition to the Pennsylvania Superior Court, and new counsel—Michael Dautrich, Esq.—was appointed. Dautrich thereafter filed a "Concise Statement of Matters Complained of on Appeal," asserting that both guilty plea and post-sentence counsel had been ineffective in numerous respects, including by failing to file a direct appeal. On August 23, 2000, the Court of Common Pleas filed a memorandum opinion in which the court noted that the record was silent as to whether petitioner had waived his right to a direct appeal and requested that the Superior Court remand the case for an evidentiary hearing "on the issue of whether the [petitioner] has waived this right, and, if he has not, for a determination of whether or not the [petitioner] is entitled to appeal *nunc pro tunc*." *See Hernandez*, No. 3319-98, Mem. Op. at 5 (Berks County Ct. Com. Pl. Aug. 23, 2000).[3]

---

[3] In making this request, the Court of Common Pleas cited *Commonwealth v. Bronaugh*, 670 A.2d 147, 148-52 (Pa. Super. Ct. 1996), in which the Superior Court held that where a PCRA petitioner claims that trial counsel was ineffective for failing to file a direct appeal challenging the propriety of sentencing when requested to do so, the PCRA court may not dismiss the petition without first holding an evidentiary hearing on the issue of whether petitioner's constitutional right to a direct appeal was waived or violated by counsel's failure to file such appeal.

3

Petitioner thereafter filed a motion for leave to proceed *pro se*, and by order dated September 18, 2000, the Superior Court remanded the case for a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998),[4] retaining jurisdiction. *Commonwealth v. Hernandez*, No. 1294 MDA 2000, Order (Pa. Super. Ct. Sept. 18, 2000). Petitioner subsequently filed a motion to strike and/or withdraw his motion to proceed *pro se*, which the Superior Court granted, directing the Court of Common Pleas to forward the record in the case. *Hernandez*, No. 1294 MDA 2000, Order (Pa. Super. Ct. Oct. 6, 2000).

On October 17, 2000, the Court of Common Pleas wrote to the Superior Court, reiterating its view that petitioner was entitled to a hearing on the factual issue of whether he had waived his appellate rights and requesting permission to retain the record so that the court could hold such a hearing. (Oct. 17, 2000, letter from Hon. Forrest G. Schaeffer to David A. Szewczak, Esq., Prothonotary, Superior Court of Pennsylvania, at 1-2.) The Court of Common Pleas also noted that although, following receipt of Chiodo's "no merit" letter, the court had given petitioner notice of its intent to dismiss his PCRA petition without a hearing, and later had "purported to deny [the petition]," in fact, "neither [petitioner] nor anyone on his behalf ever filed a P.C.R.A. petition." (*Id.* at 2.)

The record does not reflect any response from the Superior Court to the Common Pleas Court's letter. Nevertheless, the Court of Common Pleas held a hearing on January 2, 2001, at which the parties stipulated that petitioner had asked Chiodo to file a direct appeal and that she had failed to perfect his direct appeal rights. *See Hernandez*, No. 3319-98, Mem. Op. at 5 (Berks

---

[4] In *Grazier*, the Pennsylvania Supreme Court held that "[w]hen a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one." 713 A.2d at 82.

4

County Ct. Com. Pl. Jan. 9, 2001). A week later, on January 9, 2001, Dautrich filed an "Amended Motion for Post Conviction Collateral Relief Nunc Pro Tunc" in the Court of Common Pleas, seeking reinstatement of petitioner's direct appeal rights. That same day, the court filed a further memorandum opinion with respect to its June 2, 2000, order denying petitioner's "PCRA petition." *Id.* at 1. The court concluded, in light of the parties' stipulation, that petitioner "did not validly waive his right to a direct appeal and . . . would be entitled to appeal *nunc pro tunc*." *Id.* at 5. Noting that Dautrich had filed an amended PCRA petition, the court requested "that the Superior Court review said motion and permit the [petitioner] to file a direct appeal, *nunc pro tunc*, the relief requested, or dismiss the instant appeal and remand the matter to this court to take the appropriate action." *Id.* at 5-6.

The Superior Court issued an opinion in the case on December 21, 2001. Because the Court of Common Pleas had treated the proceedings as if a PCRA petition had been filed, the Superior Court considered petitioner's appeal from the June 2, 2000, order denying his "PCRA petition" on the merits.[5] *Commonwealth v. Hernandez*, No. 1294 MDA 2000, Mem. at 3 (Pa. Super. Ct. Dec. 21, 2001). The court rejected petitioner's claim that guilty plea counsel had been ineffective in failing to object to a defective guilty plea colloquy, finding that the record evidence did not support petitioner's claim that his guilty plea was not knowingly, voluntarily, or intelligently given. *Id.* at 4-13. The court also rejected petitioner's claim that Chiodo had been ineffective for failing to raise "all meritorious issues on appeal," concluding that petitioner had waived the defenses of provocation, self-defense, and involuntary intoxication he contended

---

[5] Both parties had addressed the merits of the issues identified by petitioner's counsel in his "Concise Statement of Matters Complained of on Appeal"—*i.e.*, guilty plea and post-sentence counsel's ineffectiveness—in the briefs filed in the Superior Court.

should have been raised by entering into a valid guilty plea. *Id.* at 13. In light of its disposition of these issues on their merits, the court determined it need not address petitioner's remaining issues "challenging prior counsel's ineffectiveness for failing to file a direct appeal." *Id.* at 13 n.4. The Pennsylvania Supreme Court denied allocatur on July 24, 2002. *Commonwealth v. Hernandez*, No. 90 MAL 2002, Order (Pa. July 24, 2002).

On October 24, 2002, petitioner filed a "second" *pro se* PCRA petition, which the PCRA court denied on February 4, 2003. *Hernandez*, No. 98-3319, Order (Berks County Ct. Com. Pl. Feb. 4, 2003).[6] Petitioner appealed, and on June 10, 2004, the Superior Court affirmed the PCRA court's decision, finding the petition to be time-barred under 42 Pa. Cons. Stat. Ann. § 9545(b)(1), which provides, with certain exceptions not applicable here, that "[a]ny [PCRA] petition . . . , including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." *Commonwealth v. Hernandez*, 783 MDA 2003, Mem. at 4-5 (Pa. Super. Ct. June 10, 2004). In so holding, the Superior Court determined that petitioner's judgment of sentence became final on June 4, 1999, when his right to pursue a direct appeal expired.[7] *Id.* at 4. Accordingly, the court concluded, petitioner had only until June 4, 2000, to

---

[6] Although the PCRA court's order did not list the reasons for the denial, prior to issuing the order, the court had notified petitioner of its intent to dismiss the PCRA petition without a hearing and without appointment of new counsel for a number of reasons, including that the petition was untimely. *Hernandez*, No. 98-3319, Notice ¶ 15 (Berks County Ct. Com. Pl. Oct. 29, 2002). Moreover, after petitioner filed a notice of appeal from the dismissal order, the PCRA court issued a memorandum opinion setting forth the reasons for its earlier ruling, which included the untimeliness of the petition. *Hernandez*, No. 3319-98, Mem. Op. at 5 (Berks County Ct. Com. Pl. June 18, 2003).

[7] Under the Pennsylvania Rules of Criminal Procedure, "[i]f the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence." Pa. R. Crim. P. 720(A)(3). The trial court accepted petitioner's guilty plea and entered his sentence on May 4, 1999. Accordingly, contrary to the Superior Court's

6

file a timely PCRA petition, regardless of whether the petition was construed as his first or second PCRA petition. *Id.* at 4-5. Petitioner filed a petition for allowance of appeal to the Pennsylvania Supreme Court on July 9, 2004, and the Supreme Court denied allocatur on July 12, 2005. *Commonwealth v. Hernandez*, No. 771 MAL 2004 (Pa. July 12, 2005).

On November 19, 2004, while his petition for allowance of appeal was still pending in the Pennsylvania Supreme Court, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court. I referred the matter to a magistrate judge for a report and recommendation and thereafter placed the action in suspense pending the Pennsylvania Supreme Court's disposition of the petition for allowance of appeal. After that court denied allocatur, I issued a memorandum and order on July 27, 2006, adopting the magistrate judge's report and recommendation that petitioner's habeas corpus petition be dismissed as barred by the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d).[8] *Hernandez v. Folino*, No. 04-5398, 2006 WL 2136084 (E.D. Pa. July 27, 2006). In so holding, I concluded that petitioner's judgment of conviction became final on June

---

conclusion, petitioner's conviction became final thirty days later on June 3, 1999. It appears that the Superior Court's calculation was off by one day because it incorrectly believed petitioner was sentenced on May 5, 1999. *Hernandez*, 783 MDA 2003, Mem. at 1 (Pa. Super. Ct. June 10, 2004). As this one-day discrepancy makes no difference to the outcome of the case, the court hereinafter will use June 3, 1999, as the date petitioner's conviction became final.

[8] The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This one-year limitations period begins to run from the latest of four dates, the relevant one of which, for purposes of this case, is "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). The limitations period is subject to two tolling exceptions: "(1) statutory tolling during the time a 'properly filed' application for state post-conviction review is pending in state court and (2) equitable tolling, a judicially crafted exception." *Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003).

3, 1999, when the time for filing a notice of appeal in the Pennsylvania Superior Court expired.[9] *Id.* at *4-5. I also agreed with the magistrate judge that, giving petitioner the benefit of the doubt, he was entitled to statutory tolling of the limitations period from the time his conviction became final until July 24, 2002, when the Pennsylvania Supreme Court denied allocatur with respect to the Superior Court's ruling on what was determined by the Superior Court to be his original PCRA petition.[10] *Id.* at *5-6. As to petitioner's second PCRA petition, however, because the Pennsylvania courts had determined that that petition was untimely, and recognizing that "federal courts must defer to a Pennsylvania court's determination of whether a petition was timely under state law," I overruled petitioner's objection that the statute of limitations also should be tolled during the pendency of that petition. *Id.* at *6. I thus concluded that petitioner had until July 24, 2003, to file his habeas corpus petition, and that the petition, which was not filed until November 19, 2004, was untimely. *Id.*

Petitioner thereafter filed an application for certificate of appealability, which I denied. *Hernandez*, No. 04-5398, Order (E.D. Pa. Sept. 7, 2006). He also sought a certificate of appealability in the Third Circuit, but that request, too, was denied. *Hernandez v. Folino*, No. 06-4352, Order (3d Cir. Apr. 2, 2007).

On August 3, 2009, petitioner requested permission from the Third Circuit to file a

---

[9] In reaching this conclusion, I overruled petitioner's objection that his judgment of conviction was not final as of June 3, 1999, because he later sought reinstatement of his direct appeal rights by filing an "Amended Motion for Post Conviction Collateral Relief Nunc Pro Tunc" on January 9, 2001. *Id.* at *4-5.

[10] As noted, in fact, no PCRA petition had been filed. However, the Court of Common Pleas treated the case as if a PCRA petition had been filed, purporting to deny such petition on June 2, 2000, and the Superior Court elected to consider the merits of petitioner's ineffective assistance of counsel claims on appeal from the Common Pleas Court's order.

8

second or successive federal habeas petition, filing a motion in that court pursuant to 28 U.S.C. § 2244 for an order authorizing this court to consider the petition. *See* 28 U.S.C. § 2244(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). The Third Circuit denied the motion as "unnecessary" given that petitioner was seeking not to raise a new claim but to challenge this court's determination that his original habeas petition was time-barred. *In re: Hernandez*, No. 09-3236, Order (3d Cir. Oct. 14, 2009). The court noted that petitioner's challenge "should be brought in a motion filed in the District Court pursuant to Federal Rule of Civil Procedure 60(b)," citing *Gonzalez v. Crosby*, 545 U.S. 524 (2005).[11]  *Id.*

Notwithstanding the Third Circuit's admonition that his arguments regarding the timeliness of his original petition should be raised in a Rule 60(b) motion, on November 5, 2009, petitioner filed a second petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court. Petitioner argued that his initial habeas petition was timely under *Jimenez v. Quarterman* and raised claims based on the trial court's failure to provide him with an interpreter during the guilty plea proceedings and guilty plea counsel's ineffectiveness. In an order dated November 16, 2009, I dismissed the petition without prejudice for lack of subject matter jurisdiction due to

---

[11] In *Gonzalez*, the Supreme Court addressed the extent to which the AEDPA's restrictions on second or successive habeas petitions apply to a motion for relief from a judgment denying federal habeas corpus relief from a state court conviction. The Court held that where a Rule 60(b) motion filed by a federal habeas petitioner asserts (or reasserts) claims of error in the movant's state conviction, the motion is in substance a successive habeas petition and should be treated accordingly. *See Gonzalez*, 545 U.S. at 530-32, 538. However, a Rule 60(b) motion that "challenges only the District Court's failure to reach the merits" or that attacks "some defect in the integrity of the federal habeas proceedings" is not the equivalent of a successive habeas petition and thus may be evaluated solely under Rule 60(b). *See id.* at 532-36, 538.

9

petitioner's failure to obtain authorization to file a second or successive petition from the Third Circuit. *Hernandez v. Folino*, No. 09-5093, Order at 2 & n.1 (E.D. Pa. Nov. 16, 2009). I noted, however, that the dismissal was "without prejudice to the right of Petitioner to file a motion pursuant to Federal Rule of Civil Procedure 60(b)." *Id.* at 2.

On December 7, 2009, petitioner filed the instant Rule 60(b) motion, again arguing that his original habeas corpus petition was timely filed under *Jimenez*. The District Attorney of Berks County, Pennsylvania, filed a response on December 16, 2009.

## II. Legal Standards

Federal Rule of Civil Procedure 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez*, 545 U.S. at 528. Although, as noted, such relief is available in habeas cases only in limited circumstances (*see* n.11, *supra*), a state prisoner may seek relief pursuant to Rule 60(b) from a judgment denying his federal habeas petition where, as here, the motion is confined to a nonmerits aspect of the federal habeas proceeding, *see Gonzalez*, 545 U.S. at 533-56; *see also id.* at 532 n.4 (challenges to denial of habeas petition "for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar" are not challenges on the merits).

In his motion, petitioner invokes Rules 60(b)(4) and (6).[12] (*See* Pet'r's Rule 60(b) Mot.

---

[12] Petitioner does not appear to seek relief pursuant to Rules 60(b)(1)-(3) or (5), all of which are inapplicable in any event. As petitioner recognizes (Pet'r's Rule 60(b) Mot. ¶ 2), a motion pursuant to Rules 60(b)(1)-(3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). However, petitioner did not file the instant motion until December 7, 2009, more than three years after the order he seeks to reopen was entered. Rule 60(b)(5) authorizes relief from judgment when "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been

¶ 1 (citing these provisions).)

Rule 60(b)(4) permits the court to relieve a party from a "final judgment, order, or proceeding" when "the judgment is void." Fed. R. Civ. P. 60(b)(4). A judgment is void for purposes of Rule 60(b)(4) "'only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *West v. Spencer*, 321 F. App'x 151, 153 (3d Cir. 2009) (quoting *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers*, 900 F.2d 608, 612 n.1 (3d Cir. 1990)). In contrast, "a judgment is not void and is therefore not within the ambit of 60(b)(4) simply because it is erroneous, or is based upon precedent which is later deemed incorrect or unconstitutional." *Marshall v. Bd. of Educ., Bergenfield, N.J.*, 575 F.2d 417, 422 (3d Cir. 1978).

Rule 60(b)(6) "permits reopening when the movant shows 'any . . . reason justifying relief from the operation of the judgment' other than the more specific circumstances set out in Rules 60(b)(1)-(5)." *Gonzalez*, 545 U.S. at 529 (alteration in original); *see also* Fed. R. Civ. P. 60(b)(6) (authorizing relief from judgment for "any other reason that justifies relief"). A party seeking relief pursuant to Rule 60(b)(6) "must demonstrate the existence of 'extraordinary circumstances' that justify reopening the judgment." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (footnote omitted); *see also Gonzalez*, 545 U.S. at 535-36.

### III. Discussion

Petitioner seeks relief under Rule 60(b) on the ground that the court's conclusion that his original habeas petition was barred by the AEDPA's one-year statute of limitations is erroneous

---

reversed or vacated; or applying it prospectively is no longer equitable," but none of these circumstances is present in this case.

11

in light of the Supreme Court's later decision in *Jimenez v. Quarterman*. (*See* Pet'r's Rule 60(b) Mot. ¶ 7.) In that case, decided in January 2009, the Court held that where a state court had permitted a criminal defendant to file an out-of-time direct appeal, his conviction did not become "final" for purposes of commencing the AEDPA's limitations period until the out-of-time direct appeal process had concluded.[13] 129 S. Ct. at 685-87. Following the state court's order granting him the right to file an out-of-time appeal, the petitioner in *Jimenez* had filed the direct appeal, and his conviction had been affirmed. *Id.* at 684. He thereafter sought further, discretionary review in state court, but that request was denied. *Id.* The Supreme Court thus concluded that petitioner's conviction did not become "final" for purposes of 28 U.S.C. § 2244(d)(1)(A) until the time for seeking certiorari review in the U.S. Supreme Court of the state court's denial of discretionary review had expired. *Id.* at 686.

Petitioner contends that, like the petitioner in *Jimenez*, he, too, was permitted to file an out-of-time direct appeal, asserting that "on January 9, 2001, the Court of Common Pleas for Berks County granted Hernandez's right to file an appeal (NPT)." (Pet'r's Rule 60(b) Mot. ¶ 5.) Under petitioner's theory, the Superior Court's December 21, 2001, ruling was, in effect, a ruling on his direct appeal (rather than on his original "PCRA petition"), which, under *Jimenez*, did not

---

[13] The petitioner in *Jimenez* had not sought federal habeas relief prior to the time the state court granted him permission to file an out-of-time appeal, and the Court confined its decision to that scenario. *See* 129 S. Ct. at 686 ("We hold that, where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)."). Accordingly, the Court declined to decide whether petitioner could have sought timely federal habeas relief during the period after his original direct appeal was dismissed but before the state court ordered that his direct review be reopened. *Id.* at 686 n.4.

become final until July 24, 2002, when the Pennsylvania Supreme Court denied allocatur.[14] (*Id.* ¶ 7.) Petitioner further argues that, under *Jimenez*, the AEDPA limitations period should have been tolled while his second PCRA petition was pending in state court—from October 24, 2002, to July 12, 2005—thus rendering his original habeas corpus petition, filed on November 19, 2004, timely. (*See id.*)

Even if petitioner's argument were correct, it would provide no basis for relief under Rule 60(b)(4), for the fact that a judgment may be erroneous does not render the judgment void. *See Marshall*, 575 F.2d at 422. Moreover, as set forth below, the analysis in *Jimenez* is inapplicable to petitioner's case. Thus, even if the change in interpretation of 28 U.S.C. § 2244(d)(1)(A) reflected in *Jimenez* could constitute the kind of "extraordinary circumstance" necessary for relief under Rule 60(b)(6), that decision does not provide a basis for relief in the circumstances presented here.

Unlike in *Jimenez*, in which a state appellate court expressly granted the petitioner the right to file an out-of-time appeal,[15] Hernandez's direct appeal rights were never reinstated. Following a hearing in the Court of Common Pleas at which the parties stipulated that petitioner had asked his counsel to file a direct appeal and that counsel had failed to perfect his direct appeal rights, the Court of Common Pleas issued an opinion in which it requested that the

---

[14] In fact, if the Superior Court's ruling were treated as an out-of-time direct appeal, that ruling would not have become final for purposes of 28 U.S.C. § 2244(d)(1)(A) until October 22, 2002, when the ninety-day period in which to seek certiorari to the U.S. Supreme Court expired. *See Jimenez*, 129 S. Ct. at 686; *Hernandez*, 2006 WL 2136084, at *5 n.10.

[15] *See* 129 S. Ct. at 683-84 (Texas Court of Criminal Appeals held that petitioner was "entitled to an out-of-time appeal" and ordered him "returned to that point in time at which he may give written notice of appeal so that he may then, with the aid of counsel, obtain a meaningful appeal" (citation omitted)).

13

Superior Court either permit petitioner to file a direct appeal *nunc pro tunc* or remand the case for further proceedings. *Hernandez*, No. 3319-98, Mem. Op. at 6 (Berks County Ct. Com. Pl. Jan. 9, 2001). But that opinion, issued by the Court of Common Pleas while petitioner's appeal was pending with the Superior Court, did not itself reinstate petitioner's direct appeal rights. To the contrary, the opinion set forth the Common Pleas Court's suggestions to the Superior Court for how to proceed in light of the parties' stipulation and petitioner's filing of an "Amended Motion for Post Conviction Collateral Relief Nunc Pro Tunc." Moreover, after receiving the Common Pleas Court's opinion, the Superior Court declined to permit petitioner to file a direct appeal *nunc pro tunc*, instead electing to consider petitioner's appeal from the dismissal of his PCRA petition on the merits. *Hernandez*, No. 1294 MDA 2000, Order at 3 (Pa. Super. Ct. Dec. 21, 2001) ("Because the trial court has treated these proceedings as if a PCRA petition had been filed, we will consider this appeal on the merits."), 13 n.4 (determining there was no need to address petitioner's argument that both Chiodo and his guilty plea counsel had been ineffective for failing to file a direct appeal); *see also Hernandez*, No. 783 MDA 2003, Mem. at 4-5 & n.2 (Pa. Super. Ct. June 10, 2004) (affirming the dismissal of petitioner's second PCRA petition on the ground that the petition was untimely "whether labeled [petitioner's] first or second," but noting that the petition was "technically his second; given our disposition of his appeal from the PCRA order of June 2, 2000").

In *Jimenez*, the Supreme Court held that the petitioner's conviction, which initially had become final when the time for seeking discretionary review of the decision in his first direct appeal had expired, ceased to be final only after a state appellate court reopened direct review of his conviction. *Id.* at 686. "[T]he order 'granting an out-of-time appeal restore[d] the pendency

14

of the direct appeal,' and petitioner's conviction was again capable of modification through direct appeal to the state courts and to this Court on certiorari review." *Id.* (second alteration in original) (citation omitted). In contrast, once Hernandez's conviction became final upon the expiration of the time for filing a notice of appeal on June 3, 1999, nothing occurred to render the conviction "no longer final for purposes of § 2244(d)(1)(A)." *Id.* The Superior Court never granted Hernandez the right to file his direct appeal *nunc pro tunc*. Accordingly, *Jimenez* does not suggest a later date on which petitioner's conviction became final. *See Randle v. Crawford*, 578 F.3d 1177, 1185 (9th Cir. 2009) (declining to treat state supreme court's decision on petitioner's first state habeas petition as an out-of-time direct appeal under *Jimenez*, where state court "never granted [petitioner] leave to file an out-of-time direct appeal" and "explicitly stated that an untimely direct appeal was foreclosed by state rules"); *cf. De Jesus v. Acevedo*, 567 F.3d 941, 944 (7th Cir. 2009) (finding *Jimenez* inapposite where petitioner "did not obtain any relief from state court, so the date of final decision in his case remains 1991").

Nor does *Jimenez* provide a basis for statutory tolling of the AEDPA limitations period during the pendency of petitioner's second PCRA petition. In this case, both the PCRA court and the Superior Court found petitioner's second PCRA petition to be untimely under 42 Pa. Cons. Stat. Ann. § 9545(b) because it had not been filed within one year of the date the Superior Court determined his conviction became final, and the Pennsylvania Supreme Court denied review. Because the state courts rejected the petition as untimely, it was not "properly filed" for purposes of the AEDPA's statutory tolling provision, 28 U.S.C. § 2244(d)(2), and it thus did not toll the AEDPA's statute of limitations. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter for

15

purposes of § 2244(d)(2)." (alteration in original) (citation omitted)).

Nothing in *Jimenez* dictates a different result. The petitioner in that case had filed two state habeas petitions, the first of which resulted in reinstatement of his direct appeal rights (which did not occur here), and the second of which—filed after the conclusion of the out-of-time direct appeal process—had been denied (but not because it was untimely, as here).[16] 129 S. Ct. at 683-84. When the petitioner thereafter filed a federal habeas corpus petition, the timeliness of that petition depended on the availability of statutory tolling during the pendency of the second state habeas petition. *See id.* at 684 (petitioner argued that federal habeas corpus petition was timely (1) using the date the out-of-time direct appeal process concluded as the start date for the AEDPA's limitations period and (2) excluding the time during which petitioner's second state habeas petition was pending). However, "[t]he only disputed question before [the Supreme Court]" was the date on which direct review became "final" under 28 U.S.C. § 2244(d)(1)(A). *Id.* at 685. There was no dispute as to whether the second state habeas petition had been "properly filed," and the Supreme Court therefore did not address that issue. Thus, *Jimenez* does not support petitioner's contention that the AEDPA's limitations period should be tolled during the pendency of his second PCRA petition.[17] Nor does it affect the start date of AEDPA's one-

---

[16] The Supreme Court did not address the reasons for the dismissal of the petitioner's second state habeas petition in its *Jimenez* decision. However, the district court noted in its order dismissing the petitioner's federal habeas petition that both of his state habeas petitions had been "properly filed." *Jimenez v. Quarterman*, No. 6:05-CV-052-C, Order at 8 (N.D. Tex. Oct. 23, 2006).

[17] Petitioner also invokes 28 U.S.C. § 2244(d)(1)(C), under which the AEDPA's limitations period does not begin to run until "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." (*See* Pet'r's Rule 60(b) Mot. ¶ 3.) That provision, however, is of no help to petitioner. Even if the *Jimenez*

16

year limitations period since petitioner's right to file a direct appeal was never reinstated.

**IV.    Conclusion**

In his Rule 60(b) motion, petitioner seeks to reopen the court's prior order dismissing his original habeas corpus petition as untimely based on a later-decided Supreme Court case that is inapplicable to petitioner's case. Even if this change in the law were a proper basis for relief under Rule 60(b)(4) or (6), the decision on which petitioner relies is inapposite, and the court will therefore deny petitioner's motion. An appropriate order accompanies this memorandum.

---

decision were encompassed by § 2244(d)(1)(C), the decision is still inapplicable to petitioner's case, as set forth above.